UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                              :

KAREN ARMSTRONG et al.,               :
                              :

                Plaintiffs,       :
                              :               24-CV-6751 (JMF)

          -v-                      :
                              :          OPINION AND ORDER

CITY OF NEW YORK et al.,            :
                              :

                Defendants.      :
                              :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiffs Karen Armstrong and Lisa D'Ambrosio (together, "Plaintiffs"), former

employees of the New York City Department of Probation (the "DOP"), bring discrimination

and retaliation claims against the City of New York, the DOP, and the DOP Commissioner in her

official capacity,[1] as well as the former DOP Commissioner, Juanita Holmes, in her individual

capacity.  The Complaint alleges that the DOP and Holmes effectively denied Plaintiffs' requests

for medical leave and reasonable disability accommodation and then demoted them in retaliation

for making those requests, thereby violating federal, state, and local law.  *See* ECF No. 1-1

("Compl.").  Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, to dismiss the Complaint in its entirety for failure to state a claim.  *See* ECF No. 11;

*see also* ECF No. 14 ("Defs.' Mem.").  Plaintiffs oppose the motion and additionally move to

amend the Complaint.  *See* ECF No. 20 ("Pls.' Opp'n"); *see also* ECF No. 20-1 ("Proposed

---

[1]     Sharun Goodwin is now the DOP Commissioner.  Accordingly, pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, she is automatically substituted for Defendant Juanita
Holmes in her official capacity.

AC").[2]  For the reasons that follow, Defendants' motion to dismiss is GRANTED in part and DENIED in part, and Plaintiffs' motion to amend the Complaint is GRANTED.  Additionally, however, Plaintiffs are ORDERED to show cause in writing why their claims should not be severed and why D'Ambrosio's claims under state and local law should not be dismissed without prejudice to refiling in state court.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiffs' Complaint.  *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Karen Armstrong, an African American female, and Lisa D'Ambrosio, a White female, were both Assistant Commissioners of Adult Services in the DOP.  *See* Compl. ¶¶ 2, 3, 11.  They each worked at the DOP for over thirty-four years and had exemplary performance records.  *Id.* ¶¶ 12-13.  On May 3, 2024, the DOP's Director of Human Resources and Deputy Commissioner of Administration called them into a meeting and informed them that they were being demoted. *Id.* ¶ 14.  According to the DOP, the reason for their demotions was "operational changes and organizational structure."  *Id.* ¶ 15.  As a result of the demotions, they were reassigned to new locations, and their salaries were reduced by approximately 30%.  *Id.* ¶¶ 26, 27, 49, 50.

Armstrong and D'Ambrosio claim that the DOP's stated reason for their demotions was pretextual and that they were demoted for improper reasons, albeit slightly different ones.  First, Armstrong alleges she was demoted in retaliation for applying for medical leave.  *Id.* ¶ 19.  She submitted an application for medical leave on April 19, 2024, and, at the request of a DOP human resources representative, resubmitted it on May 3, 2024, after being told that her doctor's

---

[2]      Plaintiffs filed two identical memoranda in opposition to the motion to dismiss.  *See* ECF Nos. 19, 20.  The Court treats the latter-filed memorandum as the operative one.

signature on the original application was illegible.  *See id.* ¶¶ 19-21, 23.  Later that same day, Armstrong was summoned to DOP headquarters for the meeting at which she was demoted.  *Id.* ¶ 25.  One month later, on June 5, 2024, the DOP approved Armstrong's application.  *Id.* ¶ 32.

Meanwhile, D'Ambrosio alleges that she was demoted in retaliation for requesting a reasonable accommodation for a disability.  *See id.* ¶ 34.  Specifically, on March 1, 2024, she submitted paperwork, including medical documentation, to request an exemption from the requirement that DOP officers carry a firearm "because she was receiving orthopedic care for both of her hands."  *Id.* ¶¶ 34, 36, 37.  On April 16, 2024, having failed to receive a response to her request, D'Ambrosio turned in her firearm to the DOP and contacted the New York City Employee Retirement System ("NYCERS") to schedule an appointment to discuss retirement.  *Id.* ¶ 38.  Then, on May 1, 2024, she was contacted by the DOP's Advocate Director, who asked "whether she 'really' needed the accommodation."  *Id.* ¶ 39.  She said she did and that she had already turned in her firearm and filed for retirement as she had received no response to her request.  *Id.*  Two days later, she was summoned to the meeting at which she was demoted.  *Id.* ¶ 40.  On May 10, 2024, D'Ambrosio had her appointment with a pension counselor and, one month later, on June 4, 2024, she submitted a Service Retirement Application to NYCERS.  *Id.* ¶¶ 41, 44.  She never received a response to her reasonable accommodation request.  *Id.* ¶ 45.[3]

On July 23, 2024, Plaintiffs filed their Complaint in New York Supreme Court, alleging that the DOP's conduct violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 *et seq.*; and the New

---

[3]    D'Ambrosio also alleges that at some unspecified time prior to her demotion, Holmes stated in a meeting with other employees that "she did not know that D'Ambrosio was White and asked her if she was Italian."  Compl. ¶ 46.

York City Human Rights Law ("NYCHRL"), N.Y.C. ADMIN. CODE § 8-101 *et seq.*  On

September 5, 2024, Defendants removed the case to this Court based on the federal claims

raised, *see* ECF No. 1, and on November 25, 2024, they moved to dismiss the Complaint, *see*

ECF No. 11.  On January 18, 2025, Plaintiffs filed a combined opposition to the motion to

dismiss and a motion to amend the Complaint.  *See* ECF No. 20.  On January 28, 2026, the case

was reassigned from the Honorable Judge Jennifer H. Rearden to the undersigned.

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor

of the plaintiff.  *See Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319-20 (S.D.N.Y. 2012)

(citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).  A court may not dismiss any

claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a

claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007), that is, one that contains "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  More specifically, a plaintiff must allege facts showing "more than a sheer

possibility that a defendant has acted unlawfully."  *Id.*  A complaint that offers only "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.  If a plaintiff has not "nudged [his] claims across the line from

conceivable to plausible, [those claims] must be dismissed."  *Id.* at 570.

## DISCUSSION

At the outset, Plaintiffs concede that the DOP is not a suable entity.  *See* Pls.' Opp'n 2;

*see also* N.Y. City Charter ch. 17, § 396; *Albritton v. Fredella*, No. 22-CV-4512 (AS), 2024 WL

3905270, at *5 (S.D.N.Y. Aug. 22, 2024).  Accordingly, Defendants' motion to dismiss all of Plaintiffs' claims against the DOP itself must be and is granted.  That leaves Plaintiffs' claims against the City, the DOP Commissioner in her official capacity, and Holmes in her individual capacity under the ADA, FMLA, the NYSHRL, and the NYCHRL.[4]  Specifically, Armstrong claims interference and retaliation under the FMLA (Counts I, II, and III), Compl. ¶¶ 51-77; D'Ambrosio claims disability discrimination under the ADA, the NYSHRL, and the NYCHRL (Counts IV and V), *id.* ¶¶ 78-87, 88-99; and both Plaintiffs claim retaliation under the NYSHRL and NYCHRL (Counts II and III), *id.* ¶¶ 61-77.  The Court will discuss each Plaintiff's claims in turn, beginning with Armstrong.

## A.  Armstrong's Claims

As noted, Armstrong brings claims under the FMLA, the NYSHRL, and the NYCHRL. The Court will begin with her FMLA claims against the City and the DOP Commissioner in her official capacity, then turn briefly to her claims under the NYSHRL and the NYCHRL, and then consider her FMLA claims against Holmes in Holmes's individual capacity.

### 1.  FMLA Claims

The FMLA gives eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D); *see Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006).  To protect that entitlement, the Act "makes

---

[4]  Defendants treat D'Ambrosio as bringing a claim under Title VII of the Civil Rights Act of 1964 even though no such claim is pleaded in the Complaint.  *See, e.g.*, ECF No. 14 ("Defs.' Mem."), at 11 & n.4.  In any event, as Plaintiffs concede, *see* ECF No. 20 ("Pls.' Opp'n"), at 2, any such claim would be subject to dismissal for failure to satisfy the administrative prerequisites for such a claim, *see, e.g.*, *Riddle v. Citigroup,* 449 F. App'x 66, 69 (2d Cir. 2011) (summary order).

it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 462 (S.D.N.Y. 2011) (quoting 29 U.S.C. § 2615(a)).  FMLA claims thus "come in at least two varieties: interference and retaliation." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017).  "[A]n employee brings an interference claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* (internal quotation marks omitted).  By contrast, a retaliation claim involves "an employee actually exercising her rights . . . and then being subjected to some adverse employment action." *Id.*  Here, Armstrong brings both types of claims.  She argues that the DOP's failure to process her medical leave request in a timely manner interfered with her FMLA rights and that she was demoted in retaliation for her decision to apply for leave.  *See* Compl. ¶¶ 51-66.  The Court will address each claim in turn.

"[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).  Thus, "whatever the nature of the alleged interference, a plaintiff can [generally] establish a violation of the Act only if the employer's actions 'ultimately result in the denial of a benefit under the FMLA.'" *Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252 (JMF), 2015 WL 4760184, at *3 (S.D.N.Y. Aug. 12, 2025) (quoting *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 182 (D. Conn. 2015)).  Relatedly, "[a] mere administrative delay in approving a leave

6

request does not amount to interference unless a plaintiff shows that she was harmed as a result of the delay, and did not take FMLA days because [s]he lacked the approval." *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 326 (S.D.N.Y. 2024) (internal quotation marks omitted).

Here, it is undisputed that Armstrong satisfies the first four elements of an interference claim, but she does not allege that she was denied FMLA benefits; to the contrary, the Complaint explicitly alleges that she was granted FMLA leave. *See* Compl. ¶ 32. Nor does the Complaint allege that she was harmed as a result of any delay in approving her leave request. It follows that the FMLA interference claim, as currently pleaded, fails as a matter of law and must be dismissed. *See Stuart*, 2015 WL 4760184, at *4 (holding that such a claim cannot succeed when an employer "approve[s] . . . every request for leave."); *Tieu*, 717 F. Supp. 3d at 326 (collecting cases holding that mere delay alone is insufficient to state a claim). That said, Armstrong's proposed amended complaint does allege that she suffered harm as a result of the delay because, during the delay, she was forced to use other forms of leave for doctor's appointments and medical treatment. *See* Proposed AC ¶ 32. That would be sufficient to state a claim for FMLA interference. *See, e.g.*, *Smith*, 769 F. Supp. 2d at 468-69 (granting the plaintiff leave to amend his complaint to "add greater specificity" to his FMLA interference claim). Accordingly, the Court will grant Armstrong leave to file an amended complaint to cure the defect in her FMLA interference claim.

By contrast, the existing Complaint pleads a plausible FMLA retaliation claim. Unlike interference claims, FMLA retaliation claims are evaluated under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Graziadio*, 817 F.3d at 429. Under that framework, the plaintiff has "the initial burden under

the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas*, 411 U.S. at 802. "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio*, 817 F.3d at 429 (cleaned up). Critically, however, "[a]t the pleading stage, the plaintiff's burden is even lower. The Second Circuit has held that a plaintiff is not required to plead even 'a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss.'" *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 45 (D. Conn. 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). "Rather, because 'a temporary presumption of discriminatory motivation' is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Vega*, 801 F.3d at 84 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

It is undisputed here that Armstrong exercised rights protected under the FMLA by requesting medical leave, that she was qualified for her position, and that her demotion constitutes an adverse employment action. The only question, then, is whether she sufficiently alleges that her demotion occurred under circumstances giving rise to an inference of retaliatory intent. She has. At the motion to dismiss stage, causation may be satisfied by alleging "close temporal proximity between the exercise of [a plaintiff's] FMLA-protected rights" and the adverse employment action. *Crawford v. Bronx Cmty. Coll.*, No. 22-CV-1062 (PGG) (SLC), 2023 WL 11862082, at *15 (S.D.N.Y. July 19, 2023), *recommendation and report adopted*, 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024); *see also Colon v. Fashion Inst. of Tech.*, 983 F.

Supp. 2d 277, 287 (S.D.N.Y. 2013); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, Armstrong was demoted on the *same day* that she submitted her revised FMLA application. *See* Compl. ¶¶ 23-25. It is hard to get any closer in time than that. And that is enough, at this stage of the litigation, to give rise to an inference of retaliatory intent. *Cf. Spinelli v. City of New York*, No. 13-CV-7112 (GBD) (SN), 2014 WL 4828814, at *4 (S.D.N.Y. Sept. 24, 2014) (denying motion to dismiss FMLA retaliation claims given gap in time of "about a month" between exercise of FMLA rights and adverse employment action).

Defendants offer two main counterarguments, but neither is availing. First, they argue that any inference of retaliatory intent is undercut by the fact that both Plaintiffs were subjected to the same adverse action — demotion — even though they each allegedly engaged in different protected activity, *see* Defs.' Mem. 25, thereby bolstering the likelihood that their demotion was for the stated reason of an "internal re-organization within the DOP," ECF No. 23 ("Defs.' Reply"), at 9. But those arguments are relevant to the second step of the burden-shifting framework — namely, whether Defendants had a legitimate, non-discriminatory reason for their actions, *see Graziadio*, 817 F.3d at 429 — not to whether Armstrong pleads a minimal inference of discriminatory motivation, which is the only question at the pleading stage. Second, Defendants argue that Armstrong fails to allege that the purported decisionmakers in her demotion meeting — DOP's Director of Human Resources and Deputy Commissioner of Administration — were even aware of her FMLA request. Defs.' Mem. 26. But Armstrong alleges that she submitted her FMLA paperwork to DOP Human Resources, which acknowledged receipt of her submission. *See* Compl. ¶¶ 20, 24. It is therefore reasonable to infer — and the Court must infer — that DOP's Director of Human Resources had, at minimum, knowledge of her request. *See Cohen*, 874 F. Supp. 2d at 319-20 ("In reviewing a motion to

9

dismiss pursuant to Rule 12(b)(6), the Court must . . . draw all reasonable inferences in favor of the plaintiff.").  Defendants' arguments may ultimately carry the day at summary judgment or trial, but they are insufficient at the moment to overcome Armstrong's plausible allegations in the Complaint.  Accordingly, the Court finds that Armstrong plausibly alleges an FMLA retaliation claim.[5]

## 2.  NYSHRL and NYCHRL Claims

The Court need not dwell as long on Armstrong's NYSHRL and NYCHRL claims.  "To establish a prima facie case of unlawful retaliation under the NYSHRL, 'a plaintiff must prove that: (1) he participated in a legally protected activity: (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action.'"  *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011) (quoting *Bowles v. New York City Transit Auth.*, 285 F. App'x 812, 814 (2d Cir. 2008) (summary order)).  "The elements of retaliation under the NYCHRL differ only in that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'"  *Id.* (quoting *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 509 n.12 (S.D.N.Y. 2010)).  Critically, however, "[a] request for FMLA leave

---

[5]    In their reply brief, Defendants also assert that "Armstrong[]" fails to plead a plausible connection between her FMLA request and her demotion because she was "demoted more than two months after any protected activity."  ECF No. 23 ("Defs.' Reply"), at 9.  The Court assumes that sentence is intended to refer to D'Ambrosio.  *Cf.* Defs.' Mem. 26 ("Plaintiff [D']Ambrosio requested her accommodation more than two months prior to her purported demotion.").  To the extent it accurately refers to Armstrong, however, the assertion is both too little and too late.  Too late because the Court will not entertain an argument made for the first time in a reply brief. *See, e.g.*, *Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007) (Lynch, J.).  And too little because the Complaint alleges that, on the same day Armstrong was demoted, she "submitted a revised FMLA application."  Compl. ¶ 23.

does not constitute 'protected activity' for purposes of the NYSHRL and the NYCHRL." *Crawford*, 2024 WL 3898361, at *17 n.5; *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012). That proposition is fatal to Armstrong's claims because the gravamen of those claims is that the DOP retaliated against her for requesting medical leave pursuant to the FMLA. *See* Compl. ¶¶ 61-77. Accordingly, Armstrong's retaliation claims under the NYSHRL and NYCHRL must be and are dismissed.

### 3. Claims Against Juanita Holmes in Her Individual Capacity

That leaves only Armstrong's FMLA claims against Holmes in her individual (rather than official) capacity. "An individual may be held liable under the FMLA only if she is an 'employer,' which is defined as encompassing 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" *Graziadio*, 817 F.3d at 422 (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)). Whether an individual is an employer depends on whether she "possessed the power to control the worker in question, with an eye to the economic reality presented by the facts of each case." *Id.* (cleaned up). To evaluate whether that is the case, courts consider a number of factors, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (cleaned up). "In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking whether the putative employer controlled in whole or in part plaintiff's rights under the FMLA." *Id.* at 423.

Measured against these standards, Armstrong's claims against Holmes — as currently pleaded — fall woefully short. Armstrong fails to allege *any* facts to demonstrate that Holmes possessed the power to control her. Indeed, the Complaint makes only one factual allegation

11

about Holmes at all — and it pertains to a statement she allegedly made in reference to *D'Ambrosio's* race and nationality. Compl. ¶ 46; *see id.* ¶ 47. Accordingly, Armstrong's FMLA claims against Holmes must be and are DISMISSED. That said, the proposed amended complaint alleges that "Defendants acted at the behest and direction of the Commissioner who made it known that the taking of any sort [of] leave medical or otherwise was highly disfavored and frowned upon in the agency since she became its head." Proposed AC ¶ 58; *see also* Pls.' Opp'n 6-7. That may not be enough on its own to meet the economic reality test, but it suggests that Armstrong may be able to plead a plausible claim. Accordingly, and out of an abundance of caution, the Court will grant her leave to file an amended complaint to cure the defect in her FMLA retaliation claim against Holmes in her individual capacity.[6]

## B. D'Ambrosio's Claims

By contrast, D'Ambrosio's federal claims under the ADA can be swiftly dismissed. To file suit in federal district court under the ADA, "a private plaintiff must first file a timely charge" with the Equal Employment Opportunity Commission ("EEOC"). *Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011) (summary order). D'Ambrosio concedes that she did not timely file charges with the EEOC and, thus, "that the administrative prerequisites for bringing a federal claim under the ADA . . . have not been met." Pls.' Opp'n 2. Accordingly, her ADA claims must be and are DISMISSED.

---

[6]    There appears to be a Circuit split over whether public sector supervisors may be sued in an individual capacity under the FMLA. *Compare Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003) (holding they may not), *cert. denied*, 542 U.S. 937 (2004); *Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999) (same)*, with Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006) (holding they may); *Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002) (same). Defendants do not press the argument here and, thus, have forfeited it for present purposes.

12

Had D'Ambrosio brought suit on her own, the Court would decline to exercise supplemental jurisdiction over her claims under the NYSHRL and NYCHRL claims and dismiss those claims too, albeit without prejudice to refiling in state court. *See, e.g.*, *Gayle v. Home Box Off., Inc.*, No. 17-CV-5867 (JMF), 2018 WL 2059657, at *4 (S.D.N.Y. May 1, 2018) ("In general, where a court dismisses all of a plaintiff's federal claims before trial, as here, it should decline to exercise supplemental jurisdiction and dismiss his state-law claims 'as well.'" (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998), and citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). That begs the question of whether a different result is warranted because D'Ambrosio and Armstrong brought suit together, which, in turn, begs the question of whether they are properly suing together. Given that Armstrong and D'Ambrosio press different theories of discrimination, there are reasons to be skeptical. *See, e.g.*, *Tardd v. Brookhaven Nat'l Lab'y*, No. 04-CV-3262 (ADS), 2007 WL 1423642, at *7-12 (E.D.N.Y. May 8, 2007) (severing the discrimination claims of two plaintiffs and discussing relevant cases).

Accordingly, and because the issue of jurisdiction should be addressed in the first instance, *see, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("[J]urisdiction [must] be established as a threshold matter"), the Court will reserve judgment on the merits of D'Ambrosio's claims under the NYSHRL and the NYCHRL pending further briefing. In particular, Plaintiffs shall, **within two weeks of the date of this Opinion and Order**, show cause in writing why their claims should not be severed and D'Ambrosio's claims under the NYSHRL and the NYCHRL should not be dismissed without prejudice to refiling in state court. If Plaintiffs fail to show cause by that date, the Court will, without further notice to the parties, sever Plaintiffs' claims and dismiss D'Ambrosio's claims without prejudice to

13

refiling in state court. If Plaintiffs do show cause by that date, Defendants may file a response **within two weeks** of Plaintiffs' submission.

### CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part, and Plaintiffs' motion to amend their Complaint is GRANTED, at least as to Armstrong's claims. In addition, however, Plaintiffs are ORDERED **within two weeks of the date of this Opinion and Order** to show cause in writing why their claims should not be severed and D'Ambrosio's state and local law claims should not be dismissed without prejudice to refiling in state court. Because resolving the question of whether Plaintiffs' claims are properly joined may bear on which claims will proceed, Plaintiffs should refrain from filing any amended complaint until the Court resolves whether their claims should be severed and, if appropriate, rules on the merits of D'Ambrosio's remaining claims.

The Clerk of Court is directed to substitute Sharun Goodwin for Juanita Holmes *in her official capacity*, terminate the New York City Department of Probation as a Defendant, and terminate ECF No. 11.

SO ORDERED.

Dated: March 17, 2026
New York, New York

_____
JESSE M. FURMAN
United States District Judge

14